IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMAL WILSON, | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. RDB-19-2587 |
| | * | |
| OFFICER DONALD GAFF, | * | |
| | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Jamal Wilson ("Wilson" or "Plaintiff") brings this suit against Defendant Officer Donald Gaff ("Gaff" or "Defendant") of the Baltimore City Police Department, asserting state claims for battery (Count I), false arrest (Count II), and false imprisonment (Count III), as well as a violation of 42 U.S.C. § 1983 – the Fourth and Fourteenth Amendments to the United States Constitution (Count IV), and a violation of the Maryland Declaration of Rights (Count V).[1] (Am. Complaint, ECF No. 22.) On June 9, 2020, Defendant filed an Answer only to Plaintiff's Fourth Amendment claim under 42 U.S.C. § 1983. (ECF No. 24.)

Presently pending are Defendant's Motion for Partial Dismissal of Plaintiff's Complaint (ECF No. 18) and Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint (ECF No. 23). The parties' submissions have been reviewed and no hearing is

---

[1] The Amended Complaint contains five counts, but they are numbered as Count I, Count II, Count III, Count V, and Count VI. Accordingly, the Court will hereby renumber Counts V and VI in the Amended Complaint as Counts IV and V, respectively. Only Count IV (Violation of 42 U.S.C. § 1983 – Fourth and Fourteenth Amendments) survives.

1

necessary. *See* Local Rule 105.6 (D. Md. 2018).  For the reasons that follow, Defendant's Motion for Partial Dismissal of Plaintiff's Complaint (ECF No. 18) is DENIED AS MOOT, and Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint (ECF No. 23) is GRANTED IN PART and DENIED IN PART.  Specifically, Counts I, II, III, and V are DISMISSED WITH PREJUDICE, and Count IV remains in its entirety as to both Plaintiff's Fourth Amendment claim *and* Plaintiff's Fourteenth Amendment claim.

## BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in the plaintiff's complaint.  *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  At approximately 8:00 p.m. on or about September 11, 2016, Plaintiff Jamal Wilson was a passenger in a motor vehicle in the vicinity of Brooklyn, Maryland when Defendant, Baltimore City Police Officer Donald Gaff, made a traffic stop of the vehicle.[2] (Am. Compl. ¶¶ 7-8, ECF No. 22.)  Wilson alleges that, during this stop, Gaff demanded that he present identification, ordered him out of the vehicle, and then pushed and hit Wilson.  (*Id.* ¶ 10.) After handcuffing Wilson, Gaff allegedly began to strike him with his walkie-talkie and punch him in his jaw and face. (*Id.* ¶ 11.)  Wilson maintains that he did not contribute to or in any way provoke this contact.  (*Id.* ¶ 34.)

Wilson alleges that he sustained several injuries at the hands of Gaff: his lip was busted, his jaw was broken in three places, he passed out, and his wrists were permanently scarred by Gaff's use of handcuffs.  (*Id.* ¶¶ 14-16.)  After the altercation, Wilson alleges he was placed in

---

[2] Plaintiff alleges that, at all times relevant to his Amended Complaint, the Defendant was a duly authorized agent, servant, and/or employee of the Baltimore City Police Department, acting within the scope and course of employment.  (Am. Compl. ¶ 6, ECF No. 22.)

the back of an unmarked police vehicle and transported to Mercy Hospital, where he was examined and admitted. (*Id.* ¶ 17.) Upon leaving the hospital, Wilson was taken to Central Booking, where he alleges he was falsely charged with Failure to Obey a Lawful Order, Second Degree Assault, and Resisting Arrest. (*Id.* ¶ 18.) He asserts that he requested additional medical attention while in jail, but his request was denied. (*Id.* ¶ 19.)

After meeting with a Bail Commissioner, Wilson filed a Police Report on the incident. (*Id.* ¶ 20.) Wilson alleges that, although Gaff wrote in his sworn report of the incident that Wilson was resisting arrest, the Baltimore City Police Department's review of Gaff's body camera footage showed that Wilson did not resist arrest. (*Id.* ¶¶ 12, 21.) On November 30, 2016, the Baltimore City State's Attorney charged Officer Donald Gaff with Second Degree Assault and Misconduct in Office for his actions against Wilson on September 11, 2016. (*Id.* ¶ 22.) On December 2, 2016, the Baltimore Sun and other media outlets reported the indictment of the Defendant; additional reporting took place over the next year. (*Id.* ¶ 23.) On September 2, 2018, Gaff was convicted of Misconduct in Office but was found not guilty of Second Degree Assault. (*Id.* ¶ 25; ECF No. 23-2.)

Plaintiff filed his initial Complaint in this Court on September 6, 2019, nearly three years after the incident at issue. (ECF No. 1.) On May 4, 2020, Defendant timely[3] filed a Motion for Partial Dismissal of Plaintiff's Complaint. (ECF No. 18.) In response, on May 26, 2020, Plaintiff filed his Amended Complaint, asserting the following five counts against

---

[3] Plaintiff did not serve Defendant until January 7, 2020. (ECF No. 9.) The parties agreed at that time that the Defendant's response would be due no later than March 23, 2020. (*See* ECF No. 23 ¶ 5.) However, due to the COVID-19 pandemic, this Court issued Standing Order 2020-07, which stated, in part, that all filing deadlines "set to fall between March 16, 2020, and June 5, 2020, are extended by eighty-four (84) days." *See* USDC Standing Order 2020-07. As a result, Defendant's response was due no later than June 15, 2020.

Defendant Gaff: (1) Battery (Count I); (2) False Arrest (Count II); (3) False Imprisonment (Count III); (4) Violation of 42 U.S.C. § 1983 – Fourth and Fourteenth Amendments (Count IV); and (5) Violation of the Maryland Declaration of Rights (Count V).  (Am. Compl., ECF No. 22.)  Defendant filed his Motion for Partial Dismissal of Plaintiff's Amended Complaint on June 9, 2020, seeking dismissal of all of Plaintiff's claims except the portion of Count IV which alleges a violation of the Fourth Amendment.  (ECF No. 23.)  Defendant simultaneously filed an Answer to Count IV's assertion of a Fourth Amendment violation. (ECF No. 24.)

## STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all factual allegations contained

4

in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

### A. State Claims (Counts I, II, III, and V)

Wilson alleges that Gaff committed the following state torts during the September 11, 2016 altercation: battery (Count I), false imprisonment (Count II), and false arrest (Count III). He also alleges that Gaff's actions on September 11, 2016 violated his rights under the Maryland Declaration of Rights, which guarantees freedom from unreasonable seizures and freedom from the use of excessive, unreasonable, and unjustified force (Count V). In order to bring any of these claims against a local government or its employees, a plaintiff must comply with the Maryland Local Government Tort Claims Act, Md. Code Ann., Cts. & Jud. Proc. § 5-304 ("LGTCA").

The LGTCA provides, in relevant part, that: "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury," and such notice "shall be in writing, and shall state the time, place, and cause of the injury." *See id.* § 5-304(b). An action

for unliquidated damages against the Baltimore City Police Department or one of its employees, as is brought in this case, falls within the scope of this rule. *See id.* § 5-301(d)(21). Further, if the defendant is an employee of Baltimore City, as here, "notice shall be given to the City Solicitor." *Id.* § 5-304(c)(3)(i).  Maryland state constitutional claims, in addition to tort claims, are subject to the provisions of the LGTCA. *See Crystal v. Batts*, No. JKB-14-3989, 2015 WL 5698534, at *8 (D. Md. Sept. 25, 2015); *see also Rounds v. Maryland-National Capital Park & Planning Comm'n*, 441 Md. 621, 641–44 (2015).

The notice requirement of the LGTCA is "intended to apprise a local government of its possible liability at a time when it could conduct its own investigation…sufficient to ascertain the character and extent of the injury and its responsibility in connection with it." *Oliver v. Dep't of Public Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 354 (D. Md. 2018) (quoting *Faulk v. Ewing*, 371 Md. 284, 298-99, 808 A.2d 1262 (2002).  As such, "[t]he filing of this notice is a condition precedent to the plaintiff's underlying action for damages, and should be alleged as a substantive element in the complaint in order to state a claim under Maryland law." *Id.* (citing *Curtis v. Pracht*, 202 F. Supp. 2d 406, 414 (D. Md. 2002); *Hargrove v. Mayor and City Council of Baltimore*, 146 Md. App. 457, 462-63, 807 A.2d 149 (2002)).  Nevertheless, defective notice is not always fatal to a claim against a local entity or employee.  Section 5-304(d) provides that "unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, *upon motion and for good cause shown* the court may entertain the suit even though the required notice was not given." Md. Code Ann., Cts. & Jud. Proc. § 5-304(d) (emphasis added).  In addition, the notice requirement "does not apply if, within 1 year after the injury,

the defendant local government has actual or constructive notice of: (1) The claimant's injury; or (2) The defect or circumstances giving rise to the claimant's injury." *Id.* § 5-304(e).

In this case, Wilson both failed to comply with the notice requirement of the LGTCA and has failed to show good cause for this lack of notice. While Wilson's Amended Complaint provides that, "[p]ursuant to MD Cts & Jud Pro Code § 5-304(e)(1) (2016)[,] Baltimore City had actual or constructive notice of the Plaintiff's injury…," this allegation does not suffice to establish the requisite notice to the *City Solicitor* pursuant to Section 5-304(c)(3)(i). (*See* Am. Compl. ¶¶ 24, 36, 42, 49, 59.) Indeed, Wilson concedes that he never provided the requisite notice to the City Solicitor but argues that "it is reasonable to believe that whether through the media coverage or the discussions that occurred between government offices, both formally and informally, the Solicitor or his agent was apprised of the assault…." (Opp'n at 3-4, ECF No. 29.)

Wilson argues that the various news reports that were published in 2016, including a Baltimore Sun report published on December 2, 2016, must have put the City Solicitor on actual or constructive notice sufficient to meet the "actual or constructive notice" exception under Section 5-304(e)(1). *See* Md. Code Ann., Cts. & Jud. Proc. § 5-304(d). This argument is unavailing, as Wilson does not attempt to identify what those reports included nor how the reports would have put the City Solicitor on actual or constructive notice that Wilson would bring a suit for unliquidated damages. *See Dehn Motor Sales, LLC v. Schultz*, 349 Md. 460, 486-87 (2014) ("to substantially comply with the notice requirement, a claimant must provide some indication, either explicitly or implicitly, that a subsequent suit for unliquidated damages will follow").

7

Although Wilson alleges that the Baltimore City State's Attorney's Office may have been on notice of his injury because of the charges filed against Defendant Officer Gaff, such notice is not imputed to the City Solicitor, who performs an entirely different function than the State's Attorney. Indeed, Maryland courts have held that even where claimants provide timely notice to other entities of the local government, such notice failed to substantially comply with the LGTCA when the notice was not timely given to either: (1) the entity expressly designated in Section 5-304, or (2) "the unit or division with the responsibility for investigating tort claims against that local government, or the company with whom the local government or unit has contracted for that function." *See Moore v. Norouzi*, 371 Md. 154, 178, 807 A.2d 632 (2002); *see also, e.g., White v. Prince George's County,* 163 Md. App. 129, 877 A.2d 1129 (2005) (arrestee who intended to pursue tort claims against county police officers failed to substantially comply with LGTCA even though he had filed a police brutality complaint with the police department's internal affairs division, because that division had no relationship with the County Attorney (the Section 5-304 designated entity for Prince George's County) and was not the entity responsible for investigating tort claims against the county); *Wilbon v. Hunsicker,* 172 Md. App. 181, 913 A.2d 678 (2006) (mother of deceased arrestee who submitted a timely "Notice of Intent to File Suit" to the Maryland State Treasurer, the Comptroller of the Treasury, and the Baltimore City Police Commissioner had nonetheless failed to substantially comply with the LGTCA because her notice to the Baltimore City Solicitor (the Section 5-304 designated entity for Baltimore City) was untimely). Wilson has simply failed to substantially comply with the notice requirement.

Finally, Wilson does not even attempt to show good cause for his failure to comply with the notice requirement or his almost three-year delay in filing this action. Good cause is measured by a standard "of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Moore v. Norouzi*, 371 Md. 154, 168-69 (2002). Further, mere ignorance of the LGTCA's formal notice requirement does not constitute good cause to excuse compliance. *See Bibum v. Prince George's County*, 85 F. Supp. 2d 557, 565 (D. Md. 200). Wilson neither moves to waive the notice requirement nor provides any good cause for the lack of notice, as required by Section 5-304(d). There simply was no effort on Wilson's part to put the City Solicitor on notice for this lawsuit. *See Luy v. Baltimore Police Dep't*, 326 F. Supp. 2d 685, 693 (2004) (substantial compliance "still 'requires some effort to provide the requisite notice…'") (citation omitted). Accordingly, Plaintiff's state law claims (Counts I, II, II, and V) must be DISMISSED WITH PREJUDICE for failure to comply with the requirements under the LGTCA.[4]

## B. Federal Constitutional Claim – Fourteenth Amendment (Count IV)

In Count IV, Plaintiff alleges violations of the both the Fourth and Fourteenth Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. Defendant has

---

[4] Defendant also argues that he is immune from suit for Plaintiff's tort claims on the basis of common law public official immunity. This form of immunity shields public officials who perform negligent acts while performing discretionary duties. *Houghton v. Forrest*, 989 A.2d 223, 228 (Md. 2010). The doctrine of public official immunity applies "when the actor is (1) a public official; (2) the tortious conduct occurred in the course of the actor's performance of discretionary, rather than ministerial acts, and (3) those acts were within the scope of the actor's official duties." *Id.* This immunity does not shield a public official who has acted with malice. *Gray-Hopkins v. Prince George's County, Maryland*, 309 F.3d 224, 233 (4th Cir. 2002). Because the Court has dismissed Plaintiff's tort claims, the Court need not address Defendant's argument that he is entitled to common law public official immunity. *See Lee v. Cline*, 384 Md. 245, 258 (2004) (public official immunity is "generally applicable only in negligence actions or defamation actions based on allegedly negligent conduct").

filed an answer as to Count IV's assertion of a Fourth Amendment violation, and only seeks to dismiss Count IV's Fourteenth Amendment claim. To state a claim under Section 1983, a plaintiff must allege that: (1) a right conferred by the Constitution or the laws of the United States was violated and (2) the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Wilson asserts a violation of his Fourteenth Amendment rights based on the alleged excessive force used by Defendant Gaff during the arrest. Wilson also alleges a violation of his Fourteenth Amendment right "not to be unreasonably denied necessary medical treatment."

The law surrounding excessive use of force during arrest is well defined. Claims for the use of excessive force in effectuating an arrest or other seizure are governed by the Fourth Amendment's prohibition against unreasonable seizures; claims of excessive force against a convicted prisoner are governed by the Eighth Amendment's prohibition of cruel and unusual punishment; and claims of post-arrest excessive force against an arrestee or pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, which prohibits before conviction the use of excessive force that amounts to punishment. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).

Here, because Plaintiff alleges that he had been handcuffed and was effectively arrested when Defendant allegedly attacked him, the Fourteenth Amendment claim is analyzed as a claim of post-arrest excessive force against an arrestee. *See Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004); *Graham*, 490 U.S. at 395 n.10 ("It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."). In general, only conduct that "shocks the conscience" violates the Fourteenth

Amendment.  *Parrish*, 372 F.3d at 302.  However, when a plaintiff alleges that the government has failed to attend to his serious medical needs or to protect him from a substantial risk of physical harm, "government conduct that amounts to deliberate indifference is sufficiently shocking to the conscience to support a Fourteenth Amendment claim." *Krell v. Queen Anne's County*, Civil No. JKB-18-637, 2018 WL 6523883, at *7 (D. Md. Dec. 12, 2018) (citing *Parrish*, 372 F.3d at 302).  To assert a claim for deliberate indifference to a serious medical need, a plaintiff must allege a medical need that "is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention."  *Martin v. Bowman*, 48 F.3d 1216, 1219 (4th Cir. 1995).  In addition, the plaintiff must allege that the government official "subjectively recognized both that plaintiff was exposed to a substantial risk of harm and that his or her actions were inappropriate in light of that risk." *Krell*, 2018 WL 6523883 at *8 (citing *Hearn v. Lancaster Cnty.*, 566 Fed. App'x 231, 236 (4th Cir. 2014)).

At this stage, Wilson has sufficiently alleged conduct by Officer Gaff that "shocks the conscience."  Specifically, Wilson alleges that, after he was placed in handcuffs, Gaff began to strike him with his walkie-talkie and punch him in his jaw and face. (Am. Compl. ¶ 11.)  Wilson allegedly sustained several injuries at the hands of Gaff: his lip was busted, his jaw was broken in three places, he passed out, and his wrists were permanently scarred by Gaff's use of handcuffs. (*Id.* ¶¶ 14-16.)  After this altercation, Wilson alleges he was placed in the back of an unmarked police vehicle and transported to Mercy Hospital, where he was examined and admitted. (*Id.* ¶ 17.)

Moreover, Wilson's allegations suffice to assert deliberate indifference to a serious medical need in violation of the Fourteenth Amendment. Wilson alleges that, upon leaving the hospital, he was taken to Central Booking, where he maintains he was falsely charged with Failure to Obey a Lawful Order, Second Degree Assault, and Resisting Arrest.  (*Id.* ¶ 18.) Wilson asserts that he requested additional medical attention while in jail, but his request was denied. (*Id.* ¶ 19.)  Accepting Wilson's allegations as true, the Amended Complaint sufficiently states a Fourteenth Amendment due process claim.  Accordingly, Wilson's Fourteenth Amendment claim survives dismissal and Count IV will proceed in its entirety, both as to the Fourth Amendment claim to which the Defendant has already filed an Answer, as well as the Fourteenth Amendment claim.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Partial Dismissal of Plaintiff's Complaint (ECF No. 18) is DENIED AS MOOT, and Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint (ECF No. 23) is GRANTED IN PART and DENIED IN PART.  Specifically, it is GRANTED as to Counts I, II, III, and V, and those Counts are DISMISSED WITH PREJUDICE, and it is DENIED as to Count IV, which remains in its entirety as to both Plaintiff's Fourth Amendment claim *and* Plaintiff's Fourteenth Amendment claim.

A separate Order follows.

Dated:  March 11, 2021

                                                                                        _____/s/_____
                                                                                         Richard D. Bennett
                                                                                         United States District Judge